UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN J.E.M.,[1] | No. 2:26-cv-01321-TLN-DMC |
| Petitioner, | A# 235-478-092 |
| v. | |
| WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on Petitioner Edwin J.E.M.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed a response. (ECF No. 6.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

_____

[1]      The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

### I.    FACTUAL BACKGROUND[2]

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is not a citizen of the United States, but he has resided here for years.  Petitioner states he has strong family ties in the United States including a three-year-old daughter with developmental disabilities and mild cerebral palsy, who requires weekly occupational therapy. (ECF No. 1 at 5, 41–55.)  Petitioner is the primary financial support for his daughter.  (*Id.*) Petitioner has no criminal convictions.  (*Id.*; *see also* ECF No. 6-1 at 2.)

In October 2025, Petitioner applied for asylum in the United States.  (ECF No. 6-1 at 2.) Petitioner's application for asylum was still pending on February 2, 2026, when local Florida law enforcement conducted a traffic stop of Petitioner.  (*Id.*)  Law enforcement stopped Petitioner because "the vehicle came to a complete stop, but not until after the front tires of the truck were past the painted white stop bar in the roadway adjacent to the stop sign . . ." (*Id.* at 19.) Petitioner was "placed into handcuffs, double locked, searched," and arrested for driving without a valid driver's license.  (*Id.* at 20.)  Petitioner posted bond, but rather that being released, he was transferred to immigration custody on February 3, 2026.  (*Id.* at 2.)  There is no warrant in the record for Petitioner's arrest.

On March 2, 2026 — thirty days after Petitioner's arrest — Respondents instituted removal proceedings against Petitioner.  (*Id.* at 4; ECF No. 1 at 37.)  On March 31, 2026, an immigration judge ordered Petitioner to be removed from the United States.  (ECF No. 6-1 at 8–18.)  Petitioner claims he was ordered removed *in absentia*, even though he was in immigration custody at the time of the hearing.  (*Id.* at 17-35.)  Petitioner has appealed the order.  (*Id.*)

Petitioner has now been detained over three months.  During his detention, Petitioner claims he has not been provided any bond or custody determination hearing.  (ECF No. 1 at 6.) Respondents do not dispute that contention.  (*See generally* ECF No. 6.)  Petitioner challenges the lawfulness of his civil immigration detention.  (ECF No. 1.)

---

[2]    The dates in the Petition appear to be estimates or, in one case, includes an error in the year. (*See, e.g.*, ECF No. 1 at 6 (date of detention).)  Therefore, the dates and this factual background are derived from the records supporting both Petitioner's and Respondents' briefs.

## II.     STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.     ANALYSIS

Petitioner claims his detention without a bond hearing violates the Fifth Amendment Due Process Clause.[3]  (ECF No. 1 at 5–6.)  In opposition, Respondents argue that Petitioner's detention is constitutional because it is not indefinite or impermissibly prolonged.  (ECF No. 6 at 3–4.)  Respondents further contend that Petitioner has not shown that he is entitled to a custody determination or bond hearing (*id.* at 4); the Court disagrees.

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[3]     Finding relief warranted under Petitioner's Fifth Amendment claim, the Court declines to address Counts Two and Three of Petition to preserve judicial economy.

3

Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here.[4] He has resided in the United States for over three years. He has established a life in the United States and supports the life of his three-year-old daughter who is in treatments and therapies for her developmental disabilities. Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. Respondents do not dispute Petitioner's liberty interest. (*See generally* ECF No. 6.) Finding a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

---

[4] An order of removal does not alter the Court's finding. When Petitioner was arrested, there was no order of removal to justify his detention, nor were there any pending removal proceedings against him. Indeed, for the first thirty days of Petitioner's detention, the government had not initiated any process by which to adjudicate their claims of removability. Moreover, the August 2025 order of removal is not final or executable because Petitioner has appealed the order, thus, Petitioner's liberty interest remains intact.

of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for over three months, after an arrest without a warrant, and without any opportunity to be heard as to the justification of his civil detention. His separation from work and his family, namely his young daughter whom Petitioner supports, no doubt inflicts irreparable harm. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, at the time of Petitioner's arrest he was not subject to any order of removal; indeed, there were no removal proceedings pending against him for at least thirty days into his detention. The parties agree that Petitioner has no criminal convictions. Additionally, Respondents do not contend that Petitioner is a danger or a flight risk. (*See generally* ECF No. 6.) Without any showing of a legitimate interest to detain Petitioner, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest. Without any procedural safeguards, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the government's interest is low, and the effort and cost required to provide

Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondents. Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, at a minimum, Petitioner was entitled to notice and a hearing to justify his detention. Respondents have not provided any substantive opposition to the contrary. (*See generally* ECF No. 6.) Yet, Petitioner has not been provided any pre- or post-deprivation hearing in over three months of detention. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

### IV.   CONCLUSION

Petitioner is detained in violation of the Fifth Amendment and he must be released. Accordingly, IT IS HEREBY ORDERED:

1.  The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[5]

2.  Petitioner's Motion to Expedite Proceeding (ECF No. 7) is denied as moot.

3.  Respondents must IMMEDIATELY RELEASE Petitioner Edwin J.E.M. (A# 235-478-092) from custody. At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

4.  **Respondents must file a notice of compliance with this Order by May 7, 2026.**

5.  To avoid further irreparable harm and protect the public interest, Respondents are

---

[5] Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act. (ECF No. 1 at 9.) The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

6. The Clerk is directed to serve the **California City Correctional Center** with a copy of this Order.

7. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE